UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| B.B., AN INDIVIDUAL,<br><br>    Plaintiff,<br><br>vs.<br><br>SBP REALTY TRUST INC d/b/a Econolodge<br>Inn & Suites,<br><br>    Defendant | CIVIL ACTION NO:<br>**COMPLAINT** |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff B.B., by and through the undersigned counsel, and respectfully submits her complaint for damages and makes the following averments.

## INTRODUCTION

1. This action for damages is brought by B.B. ("Plaintiff"), a survivor of sex trafficking, who lives in Worcester, under the Federal William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 18 U.S.C. § 1595, as well as per any state laws as may be identified herein.

2. SBP REALTY TRUST INC d/b/a Econolodge Inn & Suites ("Defendant") was a hotel owners, hotel operator, managers, and/or supervisor of the subject premises and subject hotel located at 380 Southwest Cutoff, Northborough M.A. 01532 during the relevant time period, and prior thereto, and as such responsible, for the subject hotel doing business as the Econolodge Inn & Suites during the time period Plaintiff was sex trafficked on said premises in 2021 and 2022.

3. During the relevant time period Defendant was owner of the subject premises located at 380 Southwest Cutoff, Northborough M.A. 01532.

4.      Sex trafficking is defined under 22 U.S.C. § 7102 (11) as "The recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of a commercial sex act, in which the commercial sex act is induced by force, fraud, or coercion, or in which the person induced to perform such an act has not attained 18 years of age."

5.      Plaintiff meets the definition of a sex trafficking victim as she was induced by force, fraud, and coercion by her trafficker(s) to engage in commercial sex at the subject hotel. She was psychologically and/or physically prohibited from escape from her trafficker(s).

6.      Plaintiff is a victim as set forth in the TVPRA as she was induced to engage in commercial sex by her trafficker(s) by fraud, force, and coercion at the subject hotel.

7.      The Trafficking Victims Protections Reauthorization Act ("TVPRA") provides a civil remedy for victims of a violation of the act. Specifically, section 1595 of the TVPRA provides that "[a]n individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney's fees." 18 U.S.C. § 1595.

8.      As it pertains to the subject hotel, Plaintiff was sex trafficked at the aforesaid hotel by her trafficker(s) in 2021 and 2022.

9.      Sex trafficking had occurred at this subject hotel dating back to at least 2021 and, upon information and belief, prior thereto.

10.     As a hotel operator, Defendant controlled the training, policies, and decisions on implementation and execution of anti-trafficking policies, protocol, rules and guidelines for its subject property where Plaintiff was trafficked.

11. At all relevant and material times, upon information and belief, Defendant had knowledge of the prevalence of sexual trafficking within the hotel industry, yet Defendant failed to prevent and/or take steps to prevent this trafficking from occurring at the subject hotel, so that Defendant could continue earning a profit.

12. As part of their knowledge of sex trafficking, Defendant knew or should have known that sex trafficker(s), or 'pimps,' use drugs, threats, violence, manipulation, lies, debt bondage, and other forms of coercion to compel women, including in particular the Plaintiff herein, to engage in commercial sex acts against their will on hotel premises.

13. Plaintiff's sex trafficker(s) deliberately selected the Defendant's hotel as a venue to conduct their sex trafficking activities.

14. The passage of the TVPRA in 2008 as well as numerous other legislative initiatives, put the Defendant on notice of the high likelihood of these illegal acts occurring on the subject hotel premises which, at a minimum, warranted them to be even more vigilant and proactive in preventing this foreseeable criminal conduct.

15. Defendant participated in a venture by operating a hotel that rented rooms to individuals that Defendant knew or should have known were involved in sex-trafficking pertaining to Plaintiff.

16. The rental of a hotel room constitutes a financial benefit from a relationship with the trafficker sufficient to meet "financially benefitted" element of the §1595(a) standard.

17. Defendant, as the owner, operator, manager, and/or controller of the subject hotel, knew or should have known, based on a combination of well-documented indicators, that sex trafficking and other criminal activity was occurring, and would continue to occur, at the subject hotel as a result of their misfeasance and nonfeasance.

18.     This subject hotel could deny accommodation and/or eject a guest for a number of reasons including, but not limited to, (1) guest visibly under the influence of drugs and/or alcohol, (2) guest creating a nuisance to the public; (3) guest believed to use a hotel room for unlawful purposes, (4) guest uses hotel amenities and premises for unlawful acts, (5) guest brings in extra unregistered guests, (6) guests behavior reasonably disturbs other guests, (7) guest violates other rules set by the hotel, and (8) for other indicated reasons.

19.      Upon information and belief, years before Plaintiff was trafficked, Defendant knew or should have known of the critical role that the hotel industry plays in enabling the sex trade industry and of the widespread national epidemic of hotel/motel sex trafficking.

20.     Defendant knew or should have known that training of front-line hotel employees to be alert to red flags of trafficking activity is imperative and a best practice of hotel operating companies. Sex traffickers utilizing hotels within which to operate their illegal enterprises was well known within the industry by 2011. By 2012, training guides and videos were available through the American Hotel Lodging Association (AHLA) and ECPAT-USA and via other resources.

21.     At all material times, Defendant, individually and/or by their respective actual or apparent agents, operators, servants, and/or employees, aided, concealed, confined, benefitted and profited from sex trafficking that was occurring at the subject hotel, including as to Plaintiff.

22.     At all material times, Defendant, individually and/or by their actual or apparent agents, operators, servants, and/or employees, harbored sex trafficker(s) at the subject hotel and/or failed to rectify the foreseeable risks of sex trafficking and other criminal activity that were occurring and would continue to occur at the subject hotel.

23.     At all material times,  Defendant, individually and/or by their respective actual or

apparent agents, operators, servants, and/or employees, failed to take steps to prevent dangerous conditions from existing at the subject hotel, failed to ensure the subject hotel was safe and secure from criminal conduct and failed to report suspicious conduct, such as sex trafficking, at the subject hotel.

24. As a result of Defendant's failure to act and Defendant's negligent operations as outlined in the Complaint, Defendant allowed the subject hotel to be a premises for the carrying out of sex trafficking in violation of the TVPRA of this particular Plaintiff.

25. While Defendant profited from the room occupancy at the subject hotel, which included rental fees, increased property value, food and beverage sales on site and/or ATM fees, Plaintiff was being exposed to continuous and repeated dangerous conditions at the subject hotel as a sex trafficked victim that resulted in her confinement, bodily injuries, being exploited sexually, emotional distress, mental harm and anguish and conscious pain and suffering on the subject premises.

26. Before and during this period of trafficking as alleged herein which occurred in 2021 and 2022, Defendant was on notice of the prevalence of sex trafficking at the subject hotel as well as at similarly situated hotels within the subject location and its general vicinity, and Defendant failed to take adequate steps that would have prevented its occurrence.

27. Before and during the relevant time period Defendant failed to implement sufficient educational and training programs on sex trafficking within their business chain of command, as well as failed to implement policies for preventing, identifying, reporting, documenting, investigating, and stopping sex trafficking at the subject hotel.

28. During the relevant time period of trafficking as alleged herein which occurred in 2021 and 2022, Defendant knew or should have known that Plaintiff was being trafficked at the

subject hotel and Defendant failed to act upon the obvious and overt signs alerting them to the crimes taking place at this subject hotel.

29.    Plaintiff brings this action for damages against Defendant. Defendant, in violation of the TVPRA, knowingly benefited from a venture that they knew, or should have known, to be engaging in sex trafficking in violation of 18 U.S.C. § 1591(a) and (b), and who enabled, harbored, facilitated or financially benefited, or any combination of the foregoing, from sex trafficking in which Plaintiff was trafficked for sex, sexually exploited, and victimized in violation of the TVPRA.

30.    Had the Defendant timely and properly implemented policies and procedures common and reasonably accepted in the hospitality industry concerning anti-trafficking, safety and security, it is more likely than not that the injuries suffered by the Plaintiff at the subject hotel would have been prevented or mitigated.

31.    Defendant knowingly benefitted financially by receiving things of value by means of operating a hotel and renting rooms to trafficker(s) (or members of their entourage) and said Defendant knew or should have known said traffickers were engaged in an act in violation of the subject TVPRA chapter pertaining to Plaintiff.

32.    Defendant knew or should have known of the ongoing criminal enterprises of sex that had been conspicuously operating in the subject hotel.

33.    As a direct and proximate result of Defendant's willful blindness, negligence, facilitation, misfeasance, nonfeasance and/or consistent refusals to prevent sex trafficking at the subject hotel, the Plaintiff was drugged, malnourished, beaten, sex trafficked, sexually exploited, physically abused, mentally abused, and victimized repeatedly at this subject hotel.

34.    Plaintiff is a victim as set forth in the TVPRA as, during relevant time period herein, she

was induced to engage in commercial sex by her trafficker(s) by fraud, force and coercion at the subject hotel.

35. Due to the failure of Defendant to timely and properly embrace and implement anti-trafficking policies and practices, Plaintiff was repeatedly abused, victimized, and trafficked for sex. Defendant ignored open and obvious indications of sex trafficking that enabled Plaintiff's trafficker(s) to use the subject hotel to traffic Plaintiff and likely other victims without repercussion.

## JURISDICTION AND VENUE

36. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution, laws, or treaties of the United States, namely the TVPRA 18 U.S.C. § 1595 and this Court has supplemental jurisdiction over Plaintiff's claims that do not arise under federal law because each claim is, "so related to claims in the action within [this Court's] original jurisdiction that they form part of the same controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

37. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in the judicial district where this action was brought, and Defendant conducts business within this District pursuant to 28 U.S.C § 1391(b).

## PARTIES

38. At all times relevant and material to the sex trafficking alleged herein, Plaintiff was residing in the State of Massachusetts.

39. Plaintiff is currently a resident of the State of Massachusetts.

40.    Plaintiff is a "victim" of sex trafficking as protected under applicable provisions of the TVPRA.

41.    Plaintiff was trafficked at this subject hotel in 2021 and 2022.

42.    Plaintiff was born in 1989.

43.    Due to the sensitive, private, and potentially retaliatory nature of the allegations herein, Plaintiff's name and address are not contained in this Complaint to protect the privacy and identity of Plaintiff who incurred injuries and damages when being exploited by sex traffickers on the premises of the subject hotel. Nationwide, similarly situated Plaintiffs have proceeded by pseudonym or by their initials due to the foregoing.

44.    As it pertains to this Defendant, and in particular the allegations brought herein, Plaintiff was sex trafficked at the "subject hotel" located at 380 Southwest Cutoff, Northborough M.A. 01532.

45.    At all relevant and material times, Defendant SBP REALTY TRUST INC d/b/a Econolodge Inn & Suites located at 380 Southwest Cutoff, Northborough M.A. 01532, and, upon information and belief, were authorized to do, licensed to do, and were doing business in the State of Massachusetts offering the subject hotel as a place of public lodging.

46.    At all material times to this Complaint, Defendant was, by and through their agents, servants, staff and/or employees, the owner, operators, managers, supervisors, controllers and innkeepers of the hotel, doing business as, Econolodge Inn & Suites located at 380 Southwest Cutoff, Northborough M.A. 01532.

### SEX TRAFFICKING UNDER FEDERAL LAW

47.    The requirements for liability under TVPRA, 18 U.S.C. § 1595 on a beneficiary theory can be stated as follows: (1) the person or entity must "knowingly benefit, financially or by

receiving anything of value," (2) from participating in a venture, (3) that the "person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a).

48.     Sex trafficking is defined by the TVPRA under 22 U.S.C. § 7102, as "the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of a commercial sex act and in which the commercial sex act is induced by force, fraud, or coercion or in which the person induced to perform such act has not attained 18 years of age."

49.     Sex trafficking is prohibited by federal criminal law under the already existing crimes 18 U.S.C. § 1589 and §1590.

50.     Thus, while the complete definition of 'sex trafficking' is found in the TVPRA under 22 U.S.C. § 7102, and it is specifically prohibited under 18 U.S.C. §1591, it is nevertheless a long-recognized and familiar atrocity.

### DEFENDANT'S DUTY OF CARE TO PATRONS

51.     In the State of Massachusetts, hotels are "innkeepers" and owe patrons a special duty of care.

52.     The subject hotel is a public lodging establishment.

53.     Defendant operated, managed, supervised, controlled, leased and/or is otherwise responsible for the subject hotel for the purpose of making a profit for the relevant time period in question. The premises of the subject hotel includes a common space and private rooms as well as a parking lot that abuts to a sidewalk and/or land, and, at all material times, Defendant had possession, custody, or control of these common spaces, private rooms, parking lots and any sidewalk and/or land abutting thereto as it applies to their business of providing public lodging at the subject hotel.

54. Aside from their special duty to patrons and guests at the subject hotel, such as Plaintiff at all material times, Defendant had one of the highest obligations to protect their guests from known or anticipated dangers, which includes sex trafficking and illegal enterprises.

55. At all relevant times, Defendant was aware of and/or should have been aware of their roles and responsibility in sex trafficking.

## A. DEFENDANT'S KNOWLEDGE OF THE PREVALENCE OF SEX TRAFFICKING AT THE SUBJECT HOTEL.

56. At all relevant and material times, Defendant, as owner, operators, managers, supervisors, controllers and/or entity otherwise responsible for the subject hotel, knew or should have known that their hotel offered a level of anonymity and a level of non-traceability, making them ideal venues for crime, drugs, and sex trafficking in particular.

57. Plaintiff was forced by her trafficker(s) to engage in sex against her will with individuals she understood to be staff member(s) and/or employee(s) of the subject hotel.

58. At all relevant and material times, Defendant, as owner, operators, managers, supervisors, controllers and/or entity otherwise responsible for the subject hotel knew or should have known that hotels are the top-reported venue where sex trafficking acts occur and that traffickers were using the subject hotel as a hub for their sexual trafficking operations.

59. At all material times, Defendant, as owner, operators, managers, supervisors, controllers and/or entity otherwise responsible for the subject hotel knew or should have known that trafficker(s) were harboring victims, including Plaintiff, at the subject hotel, and were forcing them to engage in sex services, wherein buyers ("Johns") would come to the hotel to purchase sex.

60. At all relevant and material times, Defendant, individually and/or by and through their

actual or apparent agents, servants, and/or employees, witnessed and observed manifestations of sex trafficking and commercial exploitation taking place at the subject hotel through various indicators that trafficker(s) and their victims exhibit during their stay at the subject hotel as well as the parade of sex buyers going in and out of the room.

61.     At all relevant and material times, Defendant was on notice of repeated incidences of sex trafficking occurring on the subject hotel premises, yet failed to take the necessary actions to prevent sex trafficking from taking place and in particular, the sex trafficking of Plaintiff, including, but not limited to, prior notice of law enforcement sex trafficking sting operation(s) that had occurred as this subject hotel prior to the time that Plaintiff was sex trafficked thereon.

62.     At all relevant and material times, the agents and/or employees of Defendant were uniquely situated to identify and report suspicious activity on their hotel properties because from check-in to check-out there were numerous indicators of the subject sex trafficking that was occurring of this Plaintiff at the subject hotel. See e.g. indicators listed in Count 1 and Count 2 below.

63.     Defendant's agents and/or employees, however, failed to take steps to report the suspicious and obvious trafficking indicators at the subject hotel.

64.     Had Defendant properly trained their staff, agents and/or employees and/or timely and properly implemented an anti-sex trafficking protocol at this subject hotel and/or provided other reasonable security measures, they would have prevented the trafficking of persons at this subject hotel, and particularly this Plaintiff.

65.     Signs of sex trafficking at a hotel, and signs which were occurring at Defendant's hotel include, but are not limited to, those "red flags" identified in Count 1 and Count 2 below.

66.     Defendant, individually and by and through their actual or apparent agents, servants,

employees and/or staff, were aware of and/or should have been aware of several warning signs at their hotel that indicated the presence of sex trafficking, including as to the Plaintiff herein, including but not limited to:

a. Persons showing signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

b. Persons lacking freedom of movement or being constantly monitored;

c. Victim(s) dressed in a sexually explicit manner;

d. Persons requesting room or housekeeping services (additional towels, new linens, etc.), but, at times, denying hotel staff entry into the room;

e. Few or no personal possessions during check in and within the room;

f. Sex paraphernalia in rooms (condoms, lubricant, lotion);

g. Large amounts of items such as used condoms, empty lube bottles, lingerie, sex toys, bodily fluids on the sheets and towels, and other sex-related items in the hotel rooms;

h. Payments for the rooms in cash, or cash substitutes such as a prepaid credit card;

i. Checking in to hotel with local I.D./local residence;

j. Victim(s)' and/or Plaintiff's physical appearance (malnourished, bruised, beaten, drugged, and inappropriate attire);

k. A continuous procession of men (sex buyers and/or "Johns") entering and leaving room(s) where sex trafficking was occurring;

l. Excessive requests for sheets, cleaning supplies, towels, and room service;

m. Red flags identified in Count 1 below; and

n. Other red flags that Defendants knew and/or should have known of.

67. Defendant could have and should have adopted policies and procedures related to sex trafficking and made anti-sex trafficking resources readily available to their actual or apparent agents, servants, employees and/or staff, but, upon information and belief, they did not.

68. Defendant could have and should have mandated that all of their actual or apparent agents, servants, employees and/or staff complete anti-sex trafficking training, but, upon

information and belief, they did not properly do so.

69. Defendant could have and should have encouraged all of their actual or apparent agents, servants, staff, employees and/or staff to report suspected incidents of sex trafficking when observed at the subject hotel, but, upon information and belief, they did not.

70. Defendant could have and should have developed and maintained relationships with law enforcement regarding appropriate and timely responses to suspected incidents of sex trafficking at the subject hotel, but, upon information and belief, they did not.

71. Defendant could have and should have posted anti-sex trafficking awareness and informational materials in common areas and guest rooms at the subject hotel, to help eliminate sex trafficking, but, upon information and belief, they did not properly do so.

72. Defendant failed to take effective preventative measure at the subject hotel, despite the indicia of sex trafficking and effective preventative measures being widely known and available to them; they simply elected not to properly engage in preventative policies and practices.

73. By repeatedly failing to heed the call or repeatedly failing to execute their own policies, Defendant enabled and facilitated the sexual trafficking crimes at the subject hotel, and particularly the victimization of this Plaintiff.

74. Due to Defendant's actions, failures to act, and/or omissions, Defendant facilitated and enabled sex trafficker(s) to use the subject hotel for sex trafficking of women and this particular Plaintiff.

**B. THE SEX TRAFFICKING OF PLAINTIFF AT THE SUBJECT HOTEL**

75. Pertaining to this Defendant, in 2021 and 2022, Plaintiff was sex trafficked at the subject hotel by her trafficker(s).

76. At all relevant and material times to this Complaint, Defendant, individually and/or by

and through their actual or apparent agents, servants, and/or employees, rented room(s) at the subject hotel to Plaintiff's sex trafficker(s) and Defendant financially benefitted from same.

77.    At all times material to this Complaint, Defendant received monetary payment for the rental of rooms at the subject hotel, including the room(s) where Plaintiff was being sex trafficked.

78.    Plaintiff was forced to engage in sexual activities within and on the premises of the subject hotel, including within the rooms rented to and/or by Plaintiff's trafficker(s), that was at all relevant times owned, operated, managed, supervised, controlled by Defendant. Force means any form of violence compulsion or restraint exercised upon or against a person. Force can also be affected through power or pressure which need not necessitate physical components.

79.    As it pertains to this Defendant, Plaintiff was induced by her trafficker(s), by force, fraud and coercion, to perform numerous commercial sex acts per day while at the subject hotel.

80.    Upon information and belief, while at the subject hotel, Plaintiff was forced to engage in frequent use of drugs and/or alcohol and would exhibit behavior consistent with someone who was under the influence, or near overdose, of same.

81.    Defendant, individually and/ or by their actual or apparent agents, servants, staff and/or employees, knew or had constructive knowledge, that they were renting or otherwise providing rooms and services to individuals, such as Plaintiff's sex trafficker(s), who were engaged in the commercial sex trade.

82.    Defendant, individually and/or by their actual or apparent agents, servants, and/or employees, knew or should have known of suspicious activity occurring at the subject hotel and that by failing to inspect and make their hotel premises safe from criminal activity, it was foreseeable that illegal activity was, and would continue to be, carried out on their hotel

premises.

83.    At all relevant and material times, Defendant, individually and/or by and through their actual or apparent agents, servants, staff and/or employees, was uniquely positioned to observe the manifestations or indications of sex trafficking (including as to the Plaintiff) within the subject hotel and did observe and witness same.

84.    Defendant's agents, servants, staff and employees interacted with and observed Plaintiff on numerous occasions during the time that she was on the hotel premises being sex trafficked and knew or should have known of the overt, obvious and otherwise known indicators for sex trafficking which should have triggered Defendant preventing or otherwise mitigating the sex trafficking that occurred herein.

85.    Defendant knew or should have known that the subject hotel where Plaintiff was trafficked was an area known for incidences of crime and prone to sex trafficking activity on and around the subject hotel premises, including when Plaintiff was trafficked.

86.    Despite having evidence of prior sex trafficking that occurred at the subject hotel, Defendant failed to stop these actions which were foreseeable criminal conduct.

87.    Defendant could have prevented sex trafficking, including but not limited to, by: (i) distributing information to assist their agents, employees, staff in identifying sex trafficking and indications of an illegal enterprise or suspicious activity; (ii) posting notices on what is sex trafficking and a national hotline; (iii) providing a process for reporting and escalating sex trafficking concerns within the organization, and to appropriate outside agencies; (iv) requiring all employees to attend training related to handling a situation involving sex trafficking; (v) providing new hire orientation on anti-sex trafficking measures, corporate responsibility and whistleblowing of enablers; (vi) providing training and education to their staff through webinars,

seminars, conferences, and online portals on how to respond to suspected sex traffickers, victims and suspicious activity; (vii) developing and holding ongoing training sessions on sex trafficking; or providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention; (viii) providing steps they can take to deter traffickers and decline forms of bribery; (ix) ensuring strict security protocols, credit cards only, and no loitering and (x) other indicators well known to the hotel industry that are used to prevent and/or mitigate sex trafficking on a hotel's premises that this Defendant knew or should have known of, but upon information and belief did not implement.

88.     The acts and/or omissions of Defendant served to enable, support, facilitate, harbor, and otherwise further the traffickers' sale and victimization of Plaintiff, and others, for commercial sexual exploitation by repeatedly renting rooms to people they knew or should have known were engaged in sex trafficking, and particularly this Plaintiff.

## C. DEFENDANT KNOWINGLY BENEFITTED FROM PLAINTIFF'S SEX TRAFFICKING.

89.     At all relevant and material times, Defendant received money and financially profited from the forced commercial sex acts being performed by Plaintiff that were being carried out on the premises of the subject hotel.

90.     Defendant knew or should have known that they were financially profiting from the continuation of illegal commercial sex acts committed on the premises of the subject hotel through both renting of rooms and provision of the Plaintiff's forced commercial sex services.

91.     By harboring Plaintiff's sex trafficker(s) and their sex trafficked victims at the subject

hotel, Defendant, individually and/or by and through their actual or apparent agents, servants, staff, and/or employees, continued to financially profit from the room occupancy derived from not reporting and not refusing the sex trafficking of Plaintiff.

92. Accordingly, Defendant continued to financially profit from the room occupancy derived from not protecting their hotel guests, to wit Plaintiff, from being a continuous victim of sex trafficking.

## CAUSES OF ACTION

### A. COUNT I - VIOLATION OF 18 U.S.C. § 1595 ("TVPRA")

93. Plaintiff sets forth an action for violation of 18 U.S.C § 1595 as against the above captioned Defendant.

94. In support of her action against Defendant, Plaintiff adopts and incorporates by reference all paragraphs contained in this Complaint as if fully set forth herein.

95. Plaintiff is a "victim" of sex trafficking as protected under applicable provisions of the TVPRA.

96. As it pertains to this Defendant, Plaintiff was sex trafficked in violation of the TVPRA at the subject hotel located at 380 Southwest Cutoff, Northborough, M.A. 01532 in 2021 and 2022.

97. 18 U.S.C. § 1591 of the TVPRA criminalizes sex trafficking in which the person induced to person such commercial sex act has not attained 18 years of age.

98. Section 1591 of the TVPRA criminalizes sex trafficking of adults by force, fraud or coercion. See 18 U.S.C. § 1591. Separately, §1595 of the TVPRA provides individuals who are victims of sex trafficking with a civil remedy against the traffickers and/or the beneficiaries of the sex trafficking crimes. See 18 U.S.C. §1595(a). More specifically, §1595 provides for three

distinct causes of action: (1) a claim against the trafficker who directly violated §1591(a)(1) – a criminal statute; (2) a beneficiary claim against the trafficker who directly violated §1591(a)(2) – a criminal statute; and (3) a beneficiary claim against a civil Defendant who did not violate §1591, but who "knowingly benefit[ed], financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a).

99.    In this case, during the relevant time period alleged herein, Defendant took part in a common undertaking or enterprise involving risk and potential profit with Plaintiff's traffickers that violated the TVPRA.

100.   Operating a hotel and renting out rooms is an enterprise involving risk and potential profit.

101.   Defendant operating the subject hotel and renting out room(s) to Plaintiff's trafficker(s) was an enterprise involving risk and potential profit.

102.   Defendant participated in a venture by operating a hotel that rented room(s) to individuals, i.e. Plaintiffs trafficker(s), that Defendant knew or should have known were involved in sex-trafficking pertaining to Plaintiff in violation of the TVPRA.

103.   Defendant was further participating in a venture under 18 U.S.C. § 1595(a) by enabling the traffickers to conduct business without interference and by engaging in a pattern of acts and omissions that were intended to support, facilitate, harbor, and otherwise further the traffickers' sale and victimization of the Plaintiff for commercial sexual exploitation by repeatedly renting rooms at the subject hotel to people Defendant knew or should have known were engaged in sex trafficking, including as to the Plaintiff herein, in violation of the TVPRA.

104.   During the time that Plaintiff was trafficked at the subject hotel, Plaintiff's trafficker(s)

induced Plaintiff to have sex with Defendant's staff by fraud, force and/or coercion; more specifically, an individual Plaintiff perceived to be a manager with whom she was forced to have sex approximately five (5) times. She recalls this manager whom she perceived to be of Indian descent walking around the hotel frequently with a clipboard.

105. Defendant, by its agent, servant and/or employee, (who Plaintiff perceived to be a manager), endorsed, consented, and allowed the subject trafficking to occur and continue on the premises as is signaled by said staff member engaging in non-consensual sex with the Plaintiff.

106. During the time that Plaintiff was trafficked at the subject hotel, Plaintiff's trafficker(s) induced Plaintiff to have sex with Defendant's staff by fraud, force and coercion; more specifically an individual Plaintiff perceived to be a front desk clerk with whom she was forced to have sex with approximately two (2) times.

107. Defendant, by its agent, servant and/or employee, (who Plaintiff perceived to be a front desk clerk), endorsed, consented, and allowed the subject trafficking to occur and continue on the premises as is signaled by said staff member engaging in non-consensual sex with the Plaintiff.

108. A continuous business relationship existed between the subject hotel, its employees and staff, and Plaintiff's trafficker(s), in part, in that the hotel repeatedly rented rooms to individuals they knew or should have known were involved in sex trafficking on the premises, including as to the Plaintiff.

109. Plaintiff's trafficker(s) had prior commercial dealings with the subject hotel which the trafficker(s) and Defendant wished to reinstate for profit when Plaintiff's traffickers repeatedly rented room(s) that were used for trafficking of victims including Plaintiff.

110. Plaintiff's traffickers had prior commercial dealings with the Defendant its agents,

servants, staff and employees, which the parties wished to reinstate for profit. Defendant its agents, servants, staff and employees enthusiastically expressed this intent by engaging in non-consensual sex with Plaintiff at the subject hotel; more specifically the individuals Plaintiff perceived to be a manager and front desk clerk as set forth above.

111.   Upon information and belief, during the time that Plaintiff was trafficked at the subject hotel, Plaintiff's trafficker(s) had direct interaction with hotel employee(s) and staff by means of compensating employee(s) and staff member(s) to act as lookout(s)/informant(s) for Plaintiff's traffickers and informing the trafficker(s) of police activity or other similar type alerts.

112.   The aforesaid interactions, arrangements and agreements between Plaintiff's traffickers and Defendant's staff and employee(s) existed such that Defendant's involvement amounted to involvement in furthering, facilitating and enabling the sex trafficking occurring on the premises as it pertained to Plaintiff and in violation of the TVPRA.

113.   As a result of Defendant's failure to act and Defendant's negligent operations as outlined in the Complaint, Defendant allowed the subject hotel to be a vehicle for carrying out sex trafficking, including as to the Plaintiff herein.

114.   The rental of a hotel room constitutes a financial benefit from a relationship with the trafficker sufficient to meet "financially benefitted" element of the §1595(a) standard.

115.   Plaintiff recalls rooms, including but not limited to, 106 and 215 being used for sex trafficking by her traffickers and within which she was induced to have sex by fraud, force and/or coercion with sex buyers (and hotel staff) by means of force, fraud and coercion.

116.   Defendant knowingly benefited from the sex trafficking of Plaintiff by receiving payment for the rooms rented by her trafficker(s), or at the direction of her trafficker(s), at the subject hotel. In addition, Defendant received other financial benefits including but not limited to food

and beverage sales and/or ATM fees from those persons who were engaging in sex trafficking on the premises.

117.    Defendant had actual and constructive knowledge that the venture in which it voluntarily participated and from which it knowingly benefitted violated the TVPRA as to the Plaintiff.

118.    Defendant knew or should have known about the nature of the sex trafficking occurring at the subject hotel, including as they related to Plaintiff due to the many red flags then and there existing, including but not limited to:

a.    During the time that Plaintiff was trafficked at the subject hotel, Plaintiff's trafficker(s) induced Plaintiff to have sex with Defendant's staff by fraud, force and coercion; more specifically, an individual Plaintiff perceived to be a manager with whom she was forced to have sex with approximately five (5) times. She recalls this manager who she perceived to be of Indian descent walking around the hotel often with a clipboard.

b.    During the time that Plaintiff was trafficked at the subject hotel, Plaintiff's trafficker(s) induced Plaintiff to have sex with Defendant's staff by fraud, force and coercion; more specifically an individual Plaintiff perceived to be a front desk clerk with whom she was forced to have sex with approximately two (2) times.

c.    Plaintiff's traffickers operated two business enterprises out of the hotel, (1) a sex trafficking business and (2) a drug dealing business resulting on constant parade of suspicious foot traffic to the room.

d.    Constant foot traffic of "johns" to the trafficker's room to have sex with trafficked women.

e.    Constant foot traffic of drug buyers to the trafficker's room to buy their drugs. (Drug buyers included heroin users whose behavior would have been suspicious as heroin users outwardly show signs of heroin use, for example,nodding off suddenly, skin picking, and drug impaired behavior and drug impaired speech).

f.    Steady flow of suspicious and strange people coming in and out of the rented rooms.

g.    Drug use is a major indicator and red flag as it pertains to sex trafficking. A primary means of control that traffickers utilize is drug addiction manipulation and the main drug used for such manipulation is heroin.

h.  Trafficked women would walk around hotel grounds drug impaired, sleep impaired, with bruises, and malnourished.

i.  The trafficked drug impaired women on the hotel premises.

j.  The trafficked heroin impaired women on the hotel premises.

k.  The trafficked behavior impaired women on the hotel premises.

l.  The trafficked speech impaired women on the hotel premises.

m.  The trafficked hygiene impaired women on the hotel premises.

n.  The trafficked women with visible bruises (from being hit by traffickers) onthe hotel premises.

o.  The traffickers, trafficker's runners/drivers, and trafficked women standing outside the room when a "john" came to the room. When the room was not occupied by a paying "john" the room was full of people including the traffickers, the traffickers' runners/drivers, and the trafficked women. Whena "john" would come to the room, everyone but the "john" and the traffickedwoman would leave the room, so there would be a number of peopleincluding drug impaired, behavior impaired, hygiene impaired, speech impaired, sleep deprived, malnourished, with bruises loitering outside the room.

p.  Inside the hotel room there was a suspicious bunch of people and suspicious items including guns, wads of cash, multiple phones, drugs, drug paraphernalia, condoms, lubricants, lingerie, and syringes.

q.  Smoking cigarettes and drugs in room created noticeable odors which would permeate outside room.

r.  The activity of these suspicious looking people was not limited to inside the rented room and directly outside the room but also throughout the accessible common areas.

s.  Traffickers speaking to women in aggressive/abusive manner – which should have raised alarms.

t.  Staying at hotel with no luggage/suitcases.

u.  Traffickers monitoring hotel hallway or door of room or walking hotel perimeter.

v.

119.  Defendant's enabling and participation as set forth herein, and Defendant's failure, by its agents, servants, staff, and employees, to timely and properly prevent the sex trafficking or

timely intervene regarding same was a proximate and competent cause and substantial factor in causing Plaintiff's severe injuries in this case including but not limited to being the victim of sex trafficking when at this subject hotel and suffering personal injury and the trauma physically and mentally of being induced to engage in commercial sex with multiple johns per day while simultaneously being under fear of severe harm or death if she did not comply as well as all residual injuries suffered by her including her causally related PTSD.

120.    Plaintiff being sex trafficked at this subject hotel was a proximate cause, competent cause and substantial factor in causing her severe and permanent injuries including but not limited to personal injuries and significant levels of psychological trauma due to the levels of abuse she was caused to endure during the time she was trafficked. This trauma led to depression, anxiety disorders, and PTSD, which in turn affects daily functioning.

121.    As a consequence of being sex trafficked at the subject hotel, Plaintiff suffered and will continue to suffer substantial economic, physical, mental, emotional, psychiatric, psychological injuries as the result of being trafficked and sexually exploited at the subject hotel in violation of 18 U.S.C. §1591.

122.    In this matter, Plaintiff was a victim of sex trafficking on the premises of the subject hotel.

123.    Defendant rented room(s) to individual(s) it knew or should have known were engaged in sex trafficking; and of Plaintiff herein, in particular.

124.    Defendant knowingly benefited financially or by receiving anything of value from participation in a venture which said Defendant knew or should have known has engaged in an act in violation of this chapter.

125.     As to Plaintiff's TVPRA action as against the above captioned Defendant, Plaintiff is a

victim of sex trafficking within the meaning of 18 U.S.C. § 1591 and is therefore entitled to bring a civil action under 18 U.S.C. § 1595 against any individual or entity who knowingly benefits, financially or by receiving anything of value from participation in a venture which that entity or person knew or should have known has engaged in violations of the TVPRA.

126.   Defendant participated in a venture by operating the subject hotel that rented rooms to individuals that Defendant knew or should have known were involved in sex-trafficking pertaining to Plaintiff.

127.   The rental of a hotel room constitutes a financial benefit from a relationship with the trafficker sufficient to meet "financially benefitted" element of the §1595(a) standard.

128.   Defendant knowingly benefited from the sex trafficking of Plaintiff at the subject hotel by receiving payment for the room(s) rented for Plaintiff and her trafficker(s) at the subject hotel. In addition, Defendant received other financial benefits including but not limited to food and beverage sales and ATM fees from those persons who were engaging in sex trafficking.

129.   Defendant knew or should have known about the nature of the sex trafficking occurring at the subject hotel, including as they related to Plaintiff due to the many red flags then and there existing, including but not limited to:

a.   Constant foot traffic of "Johns" to the trafficker's room to have sex with trafficked women.

b.   Parade of unregistered and suspicious individuals in and out of the subject room(s) where trafficking was occurring.

c.   Suspicious people coming in and out of the rented room(s).

d.   Trafficked victim(s) would walk around hotel grounds drug and/or alcohol impaired, sleep impaired, hygiene impaired, behavior impaired, with bruises, and malnourished and in sexually explicit clothing.

e.   The trafficked drug impaired women on the hotel premises.

f.   The trafficked alcohol impaired women on the hotel premises.

g.   The trafficked behavior impaired women on the hotel premises.

h.   The trafficked speech impaired women on the hotel premises.

i.   The trafficked hygiene impaired women on the hotel premises.

j.   The trafficked women with visible bruises (from being hit by traffickers) on the hotel premises.

k.   The trafficker(s), trafficker's entourage, and trafficked women standing outside the room when a "John" came to the room. (When the room was not occupied by a paying "John" the room was full of suspicious people including the trafficker(s), the traffickers' entourage, and the trafficked women. When a "John" would come to the room, everyone but the "John" and the trafficked women would leave the room, so there would be a number of people including drug impaired, behavior impaired, hygiene impaired, speech impaired, sleep deprived, malnourished, with bruises loitering outside the room.

l.   Inside the hotel room there was a suspicious bunch of people and suspicious items including weapons, cash, phones, drugs, drug paraphernalia, condoms, lubricants, lingerie, and syringes.

m.   Smoking in room made noticeable odor which would permeate outside room.

n.   Screaming and/or loud noise emanating from room.

o.   The activity of these suspicious looking people was not limited to inside the rented room and directly outside the room but also throughout the accessible common areas and public areas of the subject hotel.

p.   Trafficker(s) speaking to women in aggressive/abusive manner – which should have raised alarms.

q.   Staying at hotel with no luggage/suitcases or few personal belongings.

r.   Plaintiff's trafficker(s) was a pimp and his general conduct on hotel grounds was not discreet. As Plaintiff's trafficker(s) was frequently on drugs and exhibited violent and aggressive behavior.

s.   Trafficker(s) monitoring hotel hallway or door of room or walking hotel perimeter.

t.   Other commonly known sex trafficking red flags which the above captioned Defendant would have been aware of had anti-trafficking measures been timely and properly implemented at the hotel.

130.    Plaintiff interacted with Defendant's staff, and Defendant's staff witnessed and observed Plaintiff, her trafficker(s) and a procession of sex buyers going in and out of the room(s), contemporaneous with above signs and indicators of trafficking occurring on the subject premises.

131.    Defendant's staff witnessed and observed on a regular and frequent basis the above signs and indicators of sex trafficking as set forth in paragraph 129 above.

132.    Plaintiff's trafficker developed relationships with some of the subject hotel's staff and employees and had illicit arrangements with them to conceal the ongoing sex trafficking occurring on the hotel premises including as to the Plaintiff.

133.    Defendant actively participated in this illegal endeavor by knowingly or negligently providing lodging in which to harbor Plaintiff while she was being trafficked.

134.    Plaintiff was forced to perform commercial sex acts in the room(s) at the subject hotel. Accordingly, the traffic and parade of men coming in and out of room used for this subject trafficking was overt and constant. This procession of unregistered male guests would have been open and obvious to anyone working at the subject hotel.

135.    Moreover, this constant traffic of men and unregistered guests coming in and out of the room(s) would cause alarm to any observing individual.

136.    Plaintiff was sold via commercial sex transactions at the Defendant's subject hotel property, where force, fraud, and/or coercion were used against her, while Defendant turned a blind eye and continued to benefit.

137.    Defendant profited from the sex trafficking of Plaintiff and knowingly or negligently aided, enabled, and facilitated the sex trafficking of Plaintiff. Defendant rented rooms to Plaintiff's trafficker(s) when they knew, or should have known, that her trafficker(s) was using

their room to subject Plaintiff to repeat sexual exploitation and sexual servitude.

138.    Defendant's failure, by its agents, servants, staff, and employees, to timely and properly prevent the sex trafficking or timely intervene regarding same was a proximate and competent cause and substantial factor in causing Plaintiff's severe injuries in this case including but not limited to being the victim of sex trafficking when at this subject hotel and suffering personal injury and the trauma physically and mentally of being induced to engage in commercial sex with multiple "Johns" per day while simultaneously being under fear of severe harm or death if she did not comply as well as all residual injuries suffered by her including her causally related PTSD.

139.    Upon information and belief, Plaintiff was advertised for sex on websites known for trafficking, whereby Defendant provided open access, via Wi-Fi, to these known websites permitting traffickers and buyers to enable, facilitate, and otherwise assist in the harboring of Plaintiff for the purpose of sex trafficking.

140.    Plaintiff being sex trafficked at this subject hotel was a proximate cause, competent cause and substantial factor in causing her severe and permanent injuries including but not limited to personal injuries and significant levels of psychological trauma due to the levels of abuse she was caused to endure during the time she was trafficked. This trauma led to depression, anxiety disorders, and PTSD, which in turn affects daily functioning

141.    As a direct and proximate result of Defendant's multiple failures to act, mandate, establish, execute anti-trafficking measures and/or modify their anti-trafficking efforts at their hotel property, Plaintiff was sex trafficked, sexually exploited, and victimized repeatedly at Defendant's hotel in 2021 and 2022.

142.    As a consequence of being sex trafficked at the subject hotel, Plaintiff suffered and will

continue to suffer substantial economic, physical, mental, emotional, psychiatric, psychological injuries as the result of being trafficked and sexually exploited at the subject hotel in violation of 18 U.S.C. §1591.

## COUNT II – NEGLIGENCE

143.    Plaintiff sets forth an action for Negligence against the above captioned Defendant.

144.    In support of her action against Defendant, Plaintiff adopts and incorporates by reference all paragraphs contained in this Complaint as if fully set forth herein.

145.    At all times relevant, Defendant owed a duty to protect Plaintiff as set forth at length below and herein.

146.    Defendant violated its duty to Plaintiff and was negligent and  careless as set forth at length below and herein.

147.    Due to the negligence of this Defendant, Plaintiff was caused to be sexually exploited, sexually abused, and sex trafficked on the subject hotel's premises in 2021 and 2022.

148.    At all times material to this Complaint, Plaintiff, while an invitee and/or otherwise present upon the premises of the subject hotel, did sustain injuries as a result of this Defendant and the criminal activity carried out at the subject hotel enabled by the negligence of Defendant.

149.    A continuous business relationship existed between the subject hotel, its employees and staff, and Plaintiff's trafficker(s), in part, in that the hotel repeatedly rented rooms to individuals they knew or should have known were involved in sex trafficking on the premises, including as to the Plaintiff.

150.     Plaintiff's trafficker(s) had prior commercial dealings with the subject hotel which the trafficker(s) and Defendant wished to reinstate for profit when Plaintiff's traffickers repeatedly

rented room(s) that were used for trafficking of victims including Plaintiff.

151.    Plaintiff's traffickers had prior commercial dealings with the Defendant its agents, servants, staff and employees, which the parties wished to reinstate for profit. Defendant its agents, servants, staff and employees enthusiastically expressed this intent by engaging in non-consensual sex with Plaintiff at the subject hotel; more specifically the individuals Plaintiff perceived to be a manager and front desk clerk as set forth above.

152.    Plaintiff was an invitee at the subject hotel and the criminal activity of sex trafficking on the premises was foreseeable considering, but not limited to, prior instance(s) of law enforcement sting operation(s) pertaining to sex trafficking on the subject premises.

153.    Defendant violated and breached their duty regarding foreseeable criminal conduct by failing to timely and properly address such foreseeable criminal conduct thereby resulting in injuries to Plaintiff as a sex trafficked victim as set forth herein.

154.    Defendant, individually and/or by and through its agents, servants, and/or employees, was under a duty to provide reasonable, adequate, and sufficient security personnel and/or to otherwise take appropriate steps to ensure the safety and protection of persons lawfully on the premises of the subject hotel and Plaintiff in particular.

155.    Defendant, individually and/or by and through its agents, servants, and/or employees, should have reasonably anticipated criminal conduct, and, in particular, sex trafficking and sexual exploitation of individual and, in particular the Plaintiff herein, by third parties, including other guests, invitees or persons at the subject hotel and timely and property implemented protocol and guidelines to prevent and/or mitigate same.

156.    Defendant, individually and/or by and through its agents, servants, and/or employees, had a duty to take precautions against reasonably anticipated and foreseeable criminal conduct and,

in particular, sex trafficking and sexual exploitation of individuals and in particular the Plaintiff herein, by third parties and to operate the subject hotel in a manner that did not endanger individuals on the grounds of the premises, including Plaintiff, who suffered as a sex trafficked victim at this particular hotel.

157.    Defendant had a duty of care to take reasonable steps to protect foreseeable victims of the dangers created by their acts and omissions, including the danger of sex trafficking and sexual exploitation on the premises at the subject hotel and in particular to Plaintiff herein.

158.    Defendant, individually and/or by and through its agents, servants, and/or employees, breached the foregoing duties because they knew, or should have known, that persons lawfully on the subject premises, such as Plaintiff, could have been victimized by, or subjected to criminal activities, including, but not limited to, sex trafficking, sex abuse, and sexual exploitation, on the premises that would likely endanger her/their health, safety, and/or well-being.

159.    Defendant, individually and/or by and through its agents, servants, and/or employees, should have reasonably anticipated that it was reasonably foreseeable from their knowledge and/or past experiences and from information well known within the hotel industry in general, that persons on the premises of the subject hotel, such as but not limited to Plaintiff, would be sex trafficked and sexually exploited and thereby suffer serious bodily and mental harm as a result of being sexually victimized by violent crimes perpetrated by third parties on the premises of the subject hotel.

160.    During the time that Plaintiff was trafficked at the subject hotel, Plaintiff's trafficker(s) induced Plaintiff to have sex with Defendant's staff by fraud, force and/or coercion; more specifically, an individual Plaintiff perceived to be a manager with whom she was forced to have sex approximately five (5) times. She recalls this manager whom she perceived to be of Indian

descent walking around the hotel frequently with a clipboard.

161.   Defendant, by its agent, servant and/or employee, (who Plaintiff perceived to be a manager), endorsed, consented, and allowed the subject trafficking to occur and continue on the premises as is signaled by said staff member engaging in non-consensual sex with the Plaintiff.

162.   During the time that Plaintiff was trafficked at the subject hotel, Plaintiff's trafficker(s) induced Plaintiff to have sex with Defendant's staff by fraud, force and coercion; more specifically an individual Plaintiff perceived to be a front desk clerk with whom she was forced to have sex with approximately two (2) times.

163.   Defendant, by its agent, servant and/or employee, (who Plaintiff perceived to be a front desk clerk), endorsed, consented, and allowed the subject trafficking to occur and continue on the premises as is signaled by said staff member engaging in non-consensual sex with the Plaintiff,

164.   Defendant, breached its duty(ies) and was negligent, and careless individually and/or by and through its agents, servants, and/or employees including but not limited to the following ways:

   a.   Failing to execute and/or implement the established security plan and/or execute and/or implement any established security plan;

   b.   Failure to publish and/or post orders at the security posts providing protocols for employees to follow in circumstances involving commercial sexual activity and/or human sex trafficking;

   c.   Failing to adopt, establish, implement, and/or enforce required policies, procedures, rules, regulations and/or guidelines concerning protection of individuals lawfully on the premises;

   d.   Failing to adopt, establish, implement, and/or enforce required policies, procedures, rules, regulations and/or guidelines concerning removal from the premises of individuals posing security threats;

e. Failing to adequately control access to the premises;

f. Failing to prevent entry of unauthorized individuals onto the premises;

g. Failing to properly and adequately hire, train and provide ongoing training to employees including but not limited to ongoing training involving recognizing, preventing and responding to criminal activity, prostitution and sex trafficking;

h. Failing to select and/or retain only personnel competent to provide proper and adequate professional services;

i. Failing to assign experienced security personnel to provide competent guard services at the subject hotel;

j. Failing to adopt, establish, implement, execute and/or enforce required policies, procedures, rules, regulations and/or guidelines concerning protection of business invitees on the premises of the subject hotel;

k. Failing to adopt, establish, implement, execute and/or enforce required policies, procedures, rules, regulations, and/or guidelines concerning proper security measures in a hotel setting;

l. Failing to adopt, establish, implement, execute and/or enforce required policies, procedures, rules, regulations, and/or guidelines concerning proper monitoring, surveillance, and patrolling of the premises;

m. Failing to detect and respond to commercial sex activity and human sex trafficking at the subject hotel;

n. Failing to conduct adequate surveillance of the premises of the subject hotel;

o. Failing to utilize surveillance equipment to monitor suspicious activity and promptly react thereto for the safety of Plaintiff;

p. Failing to respond and react to suspicious activity detected on video surveillance;

q. Failing to maintain surveillance equipment in proper working order;

r. Failing to test or properly test surveillance equipment to ensure it was in working order;

s. Failing to utilize appropriate and/or required surveillance equipment;

t. Failing to adequately monitor activity on video surveillance and promptly react thereto for the safety of Plaintiff;

u. Allowing individuals to come on to the premises for the express purpose of trafficking

Plaintiff;

v.   Failing to prevent Plaintiff from being trafficked on the premises;

w.   Failure to monitor and make necessary changes to WIFI to prevent same from being used to conduct criminal activities on premises; and

x.   Failing to exercise care, caution, and diligence required under the circumstances.

165.   By renting rooms to Plaintiff's sex traffickers, Defendant, individually and/or by and through its actual or apparent agents, servants and employees, breached the standard of good and prudent care by not reporting, intervening, disrupting or otherwise stopping the practice of traffickers committing commercial sex acts.

166.   Defendant was negligent, and careless by failing to establish and/or implement anti-trafficking policy and protocol at the subject hotel.

167.   Defendant was negligent and careless by failing to establish and/or implement End Child Prostitution and Trafficking (ECPAT) policy and protocol at the subject hotel.

168.   Defendant knew or should have known about the nature of the sex trafficking, sexual exploitation and sex abuse occurring at the subject hotel, including as they related to Plaintiff, due to the many red flags then and there existing, including but not limited to:

a.   Constant foot traffic of "Johns" to the trafficker's room to have sex with trafficked women.

b.   Parade of unregistered and suspicious individuals in and out of the subject room(s) where trafficking was occurring.

c.   Suspicious people coming in and out of the rented room(s).

d.   Trafficked victim(s) would walk around hotel grounds drug and/or alcohol impaired, sleep impaired, hygiene impaired, behavior impaired, with bruises, and malnourished and in sexually explicit clothing.

e.   The trafficked drug impaired women on the hotel premises.

f.   The trafficked alcohol impaired women on the hotel premises.

g.  The trafficked behavior impaired women on the hotel premises.

h.  The trafficked speech impaired women on the hotel premises.

i.  The trafficked hygiene impaired women on the hotel premises.

j.  The trafficked women with visible bruises (from being hit by traffickers) on the hotel premises.

k.  The trafficker(s), trafficker's entourage, and trafficked women standing outside the room when a "John" came to the room. (When the room was not occupied by a paying "John" the room was full of suspicious people including the trafficker(s), the traffickers' entourage, and the trafficked women. When a "John" would come to the room, everyone but the "John" and the trafficked woman would leave the room, so there would be a number of individuals including those who were obviously drug impaired, behavior impaired, hygiene impaired, speech impaired, sleep deprived, malnourished, and with visible bruises and injuries loitering outside the room.

l.  Inside the hotel room there was a suspicious bunch of people and suspicious items including weapons, cash, phones, drugs, drug paraphernalia, condoms, lubricants, lingerie, and syringes.

m.  Smoking cigarettes and drugs in room made noticeable odor which would permeate outside room.

n.  The activity of these suspicious looking people was not limited to inside the rented room and directly outside the room but also throughout the accessible common areas and public areas of the subject hotel.

o.  Trafficker(s) speaking to women in aggressive/abusive manner – which should have raised alarms.

p.  Staying at hotel with no luggage/suitcases or few personal belongings

q.  Plaintiff's trafficker(s) was a pimp and his general conduct on hotel grounds was not discreet. As Plaintiff's trafficker(s) was frequently on drugs and exhibited violent and aggressive behavior.

r.  Trafficker(s) monitoring hotel hallway or door of room or walking hotel perimeter.

s.  Other commonly known sex trafficking red flags which the above captioned Defendant would have been aware of had anti-trafficking and EPCAT measures been timely and properly implemented at the hotel.

169.  Plaintiff interacted with Defendant's staff, and Defendant's staff witnessed and observed

Plaintiff and her trafficker(s), contemporaneous with above signs and indicators of trafficking occurring on the subject premises.

170.    Defendant's staff witnessed and observed on a regular and frequent basis the above signs and characteristics of sex trafficking as set forth in paragraph 168 above.

171.    As a result of Defendant's negligence, Plaintiff was caused to suffer physical harm, mental anguish, humiliation, exploitation, degradation, mental distress, loss of the enjoyments of life and loss of life's pleasures both in the past and in the future.

172.    As a result of the Defendant's negligence, Defendant breached its duty to Plaintiff in not reporting, intervening, disrupting or otherwise stopping sex trafficking occurring at the subject hotel.

173.    As a direct and proximate result of the aforementioned negligent acts, omissions, and/or commissions by the Defendant, Plaintiff was repeatedly and consistently sexually exploited, sexually abused and sex trafficked at the subject hotel and was otherwise irreparably injured, both physically and psychologically due to same.

174.    As a direct and proximate result of the aforementioned negligent acts, omissions, and/or commissions by the Defendant, Plaintiff was repeatedly and consistently sexually exploited, sexually abused and sex trafficked as an adult at the subject hotel and was otherwise irreparably injured, both physically and psychologically due to same. Defendant acted outrageously and in disregard for the health and welfare of Plaintiff warranting the imposition of punitive damages.

**COUNT    III:      VIOLATION    OF    THE    MASSACHUSETTS    HUMAN TRAFFICKING AND SEXUAL SERVITUDE STATUTE, M.G.L. c. 265, §50**

175.    Plaintiff adopts, repeats, realleges and incorporates by reference the allegations set forth above, as though they were fully set forth at length herein.

176.    Massachusetts General Laws c. 265, §50(d) provides a civil cause of action to a "victim" of human trafficking and sexual servitude against "[a]ny business entity that knowingly aids or is a joint venturer in trafficking of persons for sexual servitude," which is defined by M.G.L. c. 265, §50(a)(ii) to include any person who "benefits, financially or by receiving anything of value, as a result of a violation of clause (i)."  Massachusetts General Laws c. 265, §50(a)(i) imposes criminal penalties upon any person who knowingly "subjects, or attempts to subject, or recruits, entices, harbors, transports, provides or obtains by any means, or attempts to recruit, entice, harbor, transport, provide or obtain by any means, another person to engage in commercial sexual activity, a sexually-explicit performance or the production of unlawful pornography in violation of chapter 272, or causes a person to engage in commercial sexual activity...."

177.    Plaintiff is a victim of human trafficking and sexual servitude, as defined in M.G.L. c. 265, §50(d).

178.    The Defendant is a "business entity that knowingly aid[ed] or [was] a joint venturer in trafficking of persons for sexual servitude," as defined in M.G.L. c. 265, §50.

179.    The Defendant knowingly benefitted financially and/or received value by knowingly aiding and participating in a venture which the Defendant knew or should have known engaged in conduct violative of M.G.L. c. 265, §50.

180.    The Defendant repeatedly rented rooms in its Econolodge during 2021 and 2022, provided services and amenities in exchange for value, and did not prevent, stop, report, investigate, or otherwise interfere with the individuals that it knew or in the exercise of reasonable care should have known were illegally sex trafficking Plaintiff and other women in the Defendant's Econolodge, thereby knowingly aiding and participating in a joint venture and

knowingly benefitting financially and/or receiving value from the joint venture in violation of M.G.L. c. 265, §50.

181.    To the contrary, the Defendant, by its employees and managers, further participated in the joint venture by engaging in sex acts with Plaintiff, in which her sex traffickers compelled and enticed Plaintiff to engage, in violation of M.G.L. c. 265, §50.

182.    As a direct and proximate result of the Defendant's illegal, criminal, intentional, reckless, and/or negligent misconduct and statutory violations, Plaintiff suffered the damages aforesaid.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendant for more than $75,000, as identified in each of the above-referenced claim(s) and Count(s) and as follows:

   a.   All available compensatory damages for the described losses with respect to each cause of action;

   b.   Past and future medical expenses, as well as the costs associated with past and future life care;

   c.   Past and future emotional distress;

   d.   Consequential and/or special damages;

   e.   All available noneconomic damages, including without limitation, conscious pain and suffering, past, present, and future injuries, physical injuries, emotional/mental and psychiatric/psychologic injuries, and loss of enjoyment of life;

   f.   Disgorgement of profits obtained through unjust enrichment;

   g.   Restitution;

   h.   Reasonable and recoverable attorney's fees as allowed by TVPRA;

   i.   Punitive damages with respect to each cause of action;

   j.   Costs of this action; and

   k.   Pre-judgement and all other interest recoverable.

## JURY TRIAL DEMAND

Plaintiff respectfully demands a trial by jury on all counts of her Complaint.

Respectfully Submitted,


s/ Matthew J. Fogelman, Esq.
BBO# 653916
Jeffrey M. Simons, BBO# 688665
Fogelman Law
189 Wells Avenue, Suite 302
Newton, MA 02459
Tel: 617-559-0201
mjf@fogelmanlawfirm.com
jms@fogelmanlawfirm.com


RANDOLPH JANIS, Esq., application to be made
for admission *Pro Hac Vice*
DOUGLAS and LONDON, P.C.
59 Maiden Lane, 6th Floor
New York, NY 10038
Telephone:  (212) 566-7500
Fax:  (212) 566-7501
rjanis@douglasandlondon.com


Dated:  February 16, 2024